Everything is automated. With now, with the Cingular Wireless, the United States Court of Appeals for the Federal Circuit is now open to the public. Please be seated. Good morning, ladies and gentlemen. We have four cases on the calendar this morning. People often call us a patent court. We are the patent court, but not a patent court, except this morning. We just have four patent cases, three from the district court, one of which is submitted in the briefs and not argued, and the fourth is from the PTO, and that's submitted in the briefs and also not argued. Our first case on the calendar to be argued, and we have two, four minus two equals two, Ring Plus versus Cingular Wireless et al., 2009, 1537, Mr. Mowry. May it please the court. Good morning, your honors.  I'm Ring Plus. I'd like to reserve five minutes of my time for rebuttal, if I may, and I'd like to begin our discussion with an equitable conduct and note at the outset that the lower court held that Sleevian-Streisel were disclosed to the examiner in a manner inconsistent with an attempt to hide those references, and we know those references are USPTO documents, which means the examiner was not reliant on the applicants or the prosecuting attorney to disclose any further information or documentation to assess the representations made in either the specification or remedy. Counsel, I don't understand this to be a failure-to-disclose case. I understand this to be a misrepresentation case. Yes, your honor, that is correct, but from what I've seen from all the case law from this court is that in situations where the examiner is not reliant on any further disclosures, even in misrepresentation cases that are structured as such, there is always an instance of not disclosing something further. Test results use a different amount of a compound. Who was the true author of the article? There's always some other material fact withheld from the examiner, which the examiner has no access to on its own. Well, this is a case about a blatant misrepresentation, at least that's what the lower court found, that in the background section of the patent for Sleevian-Streisel, it says no algorithms and no software disclosed in those patents, and it seemed clear to me from Streisel there's certainly an algorithm disclosed. Yes, your honor, and I'll be happy to look at those statements, and I'll start with that statement, the first one in the specification. Our basic assertion is that the court did not apply in order to singularly meet its burden of clear and convincing evidence in this instance, as to the material misrepresentation or the intent. And so looking at that material misrepresentation, the court bases it on its own reading to begin with, and also acknowledges, we know it's nobody, he's not citing anyone's testimony, there's no experts, there's not the prosecuting attorney or the- Go ahead, Judge Streisel. Mr. Murray, is it possible that what you're arguing is that any time that a patent or a reference is disclosed to the Patent Office or the Patent Office puts it in the record that there could be no intent to misrepresent? No your honor, I'm not- Particular meaning of the four corners of that reference? No your honor, I believe it still is possible to somehow intentionally try to deceive the I'm just saying in this case that, what would the intent be that we're going to try to deceive the Patent Office by disclosing the prior art, not once but twice, over the course of a couple of years. But the issue is misdisclosing it. Yes, and- Misdisclosing it. And the court said the single most reasonable inference from the evidence discussed above is that the applicants intended to deceive. Those are credibility judgments, the judgment was that the court was there? The witnesses that the court's discussing weren't present, it was deposition testimony. But the other point that's important, let's look at what the court acknowledged about that statement starting with the specification statement, which is the court acknowledged neither reference explicitly discloses software. The court also acknowledged that Mr. Schaap provided a good faith plausible explanation, which was that enablement discussion, they don't sufficiently describe them to enable them. And he was right, if we look at the evidence, that was a consistent belief of Mr. Schaap. Back from the March 5, 2002 letter that Sengura likes to cite, they cite it for the first part of this first paragraph on the second page, saying, as you know, the prior art search discloses that Sleevian and Streitzel fairly well conclude broad patent protection, but they don't finish it. What the rest of it says is, Mr. Schaap believes the prior art search shows they can get patent protection for the secondary aspects such as the software to operate such a hardware system. He then said the same thing in the 608 specification, he then said the same thing in his deposition testimony. So the court may not agree with him, but being wrong is not evidence of intent to deceive. He provided a good faith plausible explanation that was based on facts and law enablement, and there's no evidence that he believed anything to the contrary. What's the good faith basis for the statement made in Amendment B, and the response therein claiming that none of the other prior art disclosed playing the message, not playing the message when there's a busy signal?  I just didn't hear, yes. OK, let's start with there's Sleevian and Streitzel references are both disclosed, and the remark section is the Amendment B, and the Amendment B is to get over Gregoric 740, which as your honor noted is, in a busy condition, terminate, and don't play. It's a conjunctive amendment. As to Streitzel, I note there is no evidence cited in this record, in the court's opinion, that Mr. Schaap was wrong about Streitzel. In fact, the only thing the court cites supports Mr. Schaap, which is that Streitzel in its Claim 2 actually claims that its hardware system can play over busy. Mr. Schaal, Ring Plus's expert on enforceability at trial, testified, and the court acknowledged, that neither one discloses terminating. And so we're left with the court's materiality part of its decision where it cited Mr. Cohen and Mr. Retzke, but they don't go to intent, they had nothing to do, Mr. Retzke certainly had nothing to do with prosecution, it would only go to assessing whether the court agreed or didn't agree with the position, or whether he's right or wrong. Being wrong, again, is not part of an uproof of intent. So we look at Mr. Cohen, and I note that Mr. Cohen, his testimony was stated, he made it very clear that he was testifying based on his reading that day. They even had to phrase the question, well, based on your sort of prior knowledge and your reading today, how do you understand Sleevey? Neither one of those gentlemen testified to Streitzel, and Mr. Cohen not only said that he was testifying based on his reading that day, but he also said that he had nothing to do with the communications back from the patent office, and I would refer the court to JA 11145 through 11148 to understand the true context of Mr. Cohen's testimony and to understand that it really should have been given very little, any weight as to this determination, because neither one of those gentlemen were- Counsel, you've addressed Streitzel, but you didn't address Sleevey, and Sleevey, it seems to me, doesn't it very clearly disclose not playing when there's a busy signal? A couple of things on that. I would say, what Sleevey actually does, start with the actual reference itself. Sleevey discusses prior art, and that is figure 10, the box 10 in all the figures, starting with the first figure. That's its description of what Sleevey understood a conventional phone system to be. It was not the claimed invention. Every subsequent figure, two through six of that, is a box labeled number 28, in which question- I didn't hear an answer to Judge Moore's question. Oh, okay. It was susceptible to a yes or no answer. I'm sorry, Your Honor. I believe the answer would be no, it does not. The claimed invention does not. The description of a prior art. Column six, line 50 through 59, doesn't disclose exactly what we're talking about. I believe that is Sleevey's description of what it understands a conventional software, a conventional phone system to be. The very next part, I believe we're on J175, is that correct, Your Honor? I'm on column six, which is detailed description of the invention. Column six, line 50 through 59, or column five, line seven through 17, both within the detailed description of the invention, both talking about what happens when you get a busy signal. Yes. It's talking about when its hardware system is attached on to what it understands a conventional phone system to be. If we look at the previous column five, line 50, 55, 56, it's saying, thus far we've described it as a conventional system. Now it talks about the device. It calls its own invention, the device, hardware, and talks about the different components within that device, which is 28 in the charts. Then it talks about how it would interact with what it understands as a conventional system. So whenever it's talking about network 20, for example, can be programmed, which is one of the heavy pieces of evidence that the court cited to and Singular cited to, it's talking about the prior art. Because if you look at the figures, what's encased in the square 10 is prior art, and 20 is the prior art. It's what it understands a conventional system to be. It is not something Sleevey is claiming or inventing at all. It's just as it attaches on to- So you're saying what they define in the detailed description of the invention as network 20 is the prior art and not, in fact, the claimed invention? Yes, Your Honor. How often in patents do you see figures with numbers attached to them, but they don't actually pertain to the claimed invention? Only because I'm saying he's labeled it prior art. That's number 10. Column 5, you're saying column 5 lines 7 through 10, when it's talking about what happens when there's a busy signal, is not at all referencing the claimed invention? My belief is that my understanding of this, when I read it, is that it is talking about its understanding of the prior art, what it's described as in figure 1 as prior art, which is encased in square 10. Mr. Mare, I'm puzzled. When you've got such difficult, serious issues to argue, unenforceability and clamp construction and non-infringement, why do you throw in disqualification of counsel, which hardly ever happens, and dilutes the other arguments? I believe this is a case in which counsel should have been disqualified, and I think it casts serious questions on lawyers, the practice of law, and in this case, the facts and the rules, if applied properly, should have disqualified, it should have required their disqualification. Didn't the contact not know that the individual was not involved or representing the other side? I believe they did know, and the facts show they knew. You're right, that's why the court gave them a pass on this one. They said they didn't have actual knowledge of Mr. Garrison's affiliated. They don't contest that he was affiliated, but the initial email, anybody who reads that would see that person as closely affiliated with the company and its lawyer. Not only that, three weeks before, they had a privilege law claiming attorney-client privilege for a communication between Mr. Garrison and the attorney, Mr. Schaap. The next week, they deposed the attorney, Mr. Schaap, who specifically identified Mr. Garrison by name as someone else at Ring Plus. They knew, and they didn't get consent. The attempt to manufacture consent with that letter, didn't ask for consent, didn't say what they wanted, didn't say they wanted to talk to Mr. Garrison, nothing. But the court did do a pretty strong analysis under all of the circumstances of the Fifth Circuit, the ABA, ethical requirements and otherwise, and this is a discretionary issue with the district court below, though, isn't it? The determination by the court on allowing a counsel to proceed on that basis without finding an ethical violation. How do you overcome the aspect of discretionary authority by the district court in this issue? Simply because I believe the court made clear errors in understanding the facts and misapplying the rules. As we saw other Texas federal courts applying, the Texas rule required that in the same reason that the Baker Botts attorneys gave for contacting Mr. Garrison, which was, we just want to set up a deposition. That is the exact scenario in which the courts had said a proper application of the Texas rules requires they're disqualified. And I believe that the facts showed they did know he was affiliated with the company. There is therefore no excuse. They didn't get consent, and that's what the rule requires. You're into your rebuttal time, which you can continue to use or save as you wish. Okay. Thank you, Your Honor. I would note just briefly then, claim construction and MSJ I'll treat sort of together since they go together so well. The court quite simply implicitly expanded the scope of the 608 patent beyond the ringback tone period to include the post-dial delay, which ignores a necessary element of the claims, the ringback tone period, and ignores that limitation as unclaimed scope, the post-dial delay, and then says, well, they didn't infringe because they didn't perform the order of claim steps. This clearly stands claim construction infringement doctrine of equivalence all in their head. And that's the only way they could grant the MSJ non-infringement. And then looking to the 97% rule, quite simply, Ring Plus submitted in its opposition papers to that MSJ a statement from an expert saying, in a call forwarded to voicemail, it is a successful call flow and not a busy condition. Under the standards of MSJ, that should have been taken as true, and the MSJ should have been defeated. Moreover, that statement was supported by Singleton expert Dr. Wicker, as well as Erickson's call flow charts. Thank you, your honors. I reserve my time for rebuttal. We will save it for you, Mr. Carlson. Good morning, and may it please the court, I'd like to address two issues this morning. The first is the district court's first basis for summary judgment of non-infringement, which applies to 100% of the intertone subscribers. And the second issue, if I have time, is the issue of inequitable conduct. If you don't mind, I'd actually like you to reverse those, of inequitable conduct. Show me where the intent exists for a finding of inequitable conduct on the second of the district court's findings, namely, when the district court found that you misrepresented in Amendment B, when you claimed that none of the prior art disclosed the busy. Where is the evidence of intent to deceive? I think you start with the proposition that the misrepresentation was clear. In fact, their own witnesses, their own experts, their people have agreed that it was in fact a misrepresentation. As to Sleevey, their non-infringement expert, Gene Retzke, agreed that representation was false. As to Sleevey, their own patent consultant and technology expert involved in the prosecution at the time, Herb Cohen, agreed that representation was false. Now, in the district court- But all these people testified it was false after the fact, and what I'm asking you for is evidence that at the time the statement was made, there was an intent to deceive. Yes, and I can see we don't have a smoking gun. No one has confessed. But I think the district court was correct in concluding based on all of the evidence that the single most reasonable inference was- What evidence though? I know what the district court concluded. I want you to articulate for me the pieces of evidence that lead to that inference. Yes, you start with the proposition that it was a misrepresentation. Their people agree it was. They tried to say during the bench trial before the district court, we believe what we said was true, or we may have been mistaken. The district court, Judge Moore, was correct in rejecting that as not credible based on the following evidence. Number one, Robert Schaaf, the prosecuting lawyer, was well familiar with these two references as early as March 5, 2002, when he wrote his client a letter saying that these two references fairly well precluded broad patent protection. What does that have to do with whether or not there's a disclosure of not playing a message during the busy signal? It doesn't seem to me that he said in that letter, and I know they don't do this, so we won't try and claim that, or we can't try and claim it. My point is, they made the representation. It was false. Their people agree that it was false. Their good faith explanation that we may have believed what we said is not credible because they studied these references. They were familiar with them. They were very familiar with them. They told the patent office that they had very carefully examined both these references. They then put together this information disclosure statement, this IDS, that admittedly, with respect to the software representation, would have told the truth about- I don't want to talk about the software representation. I haven't heard you give me a single piece of evidence that would even arguably support an inference of intent, and I'm desperately trying to find it, so you need to tell me what it is. Yes. In addition to the fact that they were very well familiar with the references and can't say with lack of knowledge. They were familiar with the references. Yes. The fact that they never provided copies of the references to the patent office. In fact, based on the NPEP at the time, had they filed an IDS, they would have been required to provide copies of the references to the examiner. These are U.S. patents. But there was no IDS filed, right? Well, they prepared one. But it was not filed. It was never filed. He said they got it ready. He actually prepared a filing letter. He had a check cut for the filing fee. He said it was all ready to drop in the hopper, and then they made a decision not to file it. But that's a failure to file on something that's already disclosed in the patent. Where is the intent to deceive as requested by the judge? Well, again, had they done it the right way through an IDS, they would have provided the examiner with copies of the references. The examiner would have been required to review both references. They didn't do it the right way. You mean the examiner isn't obligated to read the spec and to look into what is stated to be close prior art in the spec? The examiner is required to read the specification. I think what happened here, Judge Lowry, is that the statements by the applicants led the examiner away from these references. Had the examiner actually reviewed these references, pulled them and reviewed them, it seems to me there would have been four or five respects in which the prosecution history would have documented that. How do you know he didn't? Well, we can't prove it conclusively. But the fact is that the examiner never cited Slevey or Streitzel in the form PTO 892. He never mentioned Slevey or Streitzel in any office action. That doesn't mean that he didn't consider them. Well, it doesn't conclusively show that. There's no way to know for sure. But those two bits of evidence combined with the fact that, again, copies not in the file, not cited in an office action, not on form PTO 892, they are not listed in the references cited. So I think that collection of facts indicated that the examiner likely never reviewed them. And, in fact, the applicants were successful in their efforts to lead the examiner away from those references. But how do you establish intent on that basis? Granted materiality. Let's assume materiality is established. How do you establish intent? Clear intent that they intended to receive the patent office? Well, for example, in addition to what I've said so far, the district court concluded that even a cursory review of the Streitzel reference would have indicated that it disclosed software. They said the opposite, at the same time telling the examiner that they very carefully reviewed those references. So it's the combination of the evidence. They very carefully examined this evidence. The representations they made were clearly false, as their own witnesses testified. They discussed the references with the examiner in a manner that allowed them to avoid providing copies of the references to the examiner. But there's no evidence they intended to do that. There is no evidence that they intended to avoid letting the examiner see the references and all of these things that you're asserting. I disagree. I think once they had the IDS ready to file, they had the filing letter, the check cut for the filing fee. It was ready to drop in the hopper. All they had to do was file it at that point the next day or the following day. The examiner would have had copies of the references and would have had them in a manner that the MPEP said you have to review them. Couldn't they have decided there was no need to file them in an IDS? They didn't file the IDS at all, right? That's right. It isn't as though they filed some things and omitted those. They may have concluded it wasn't necessary to file an IDS. The prior op that we would have disclosed is already in the spec. Their story, Your Honor, at the bench trial was that we got this IDS ready to file. Again, check cut, ready to drop in the hopper. Their lawyers told the story to Judge Folsom. They said what happened is we got it all ready to go and the IDS says the purpose here is to tell the PTL about the relevant prior, you know, copies attached. Their story was that it became mooted when they received the first office action. Now again, it's ready to go, ready to drop in the hopper. That story might have made sense had the office action come in that day or the next day or the day after. But it didn't. It came in one year and two months later. They put the IDS together and got it ready to file in February of 2004. The office action did not come in until April of 2005. Counsel, following up on Judge Lurie's point, the court made an express finding that there was no withholding of references in this case. So what you're suggesting now is you want us to reverse that fact finding by him in order to use that as your support for intent for inequitable conduct. No. I think what the district court found is that the fact that they cited Sleevey and Streitzel in the application is inconsistent with an intent to hide the references. I acknowledge, Judge Moore, that they disclosed the existence of Sleevey and Streitzel to the patent examiner. But everything they told the examiner about those two references was false. And they disclosed it not the right way. Can that be just argument? No. Advocacy? And I think that is obviously one of their key points. They cite to the four or five decisions of this court that suggest in certain circumstances that reasonable argument about references before the examiner is OK. And let me just make two points, Judge Lurie, about that. The first is- Your opponent, Mr. Mowrey, is Mowrey, I'm Lurie. Your Honor, I'm embarrassed and I apologize. I'm sorry. Two quick points about those cases. The first, Judge Lurie, is that the rationale of those cases is that the examiner has the art before him or her and can make his or her own decisions. Here, I suggest that the sort of overwhelming weight of the evidence is that the examiner was led away from these references and never really considered them. There's no indication in the file that happened. More important, the decisions of this court indicate that even when the examiner has the art, there is a line that you cannot cross. This court's decisions indicate, for example- I don't think we actually probably disagree. I mean, there is a line you can't intentionally misrepresent. The problem here is I don't know whether this is an intent case or a mistake, a gross negligence case, a reckless indifference case. This attorney messed up. He messed up. He made a misrepresentation. That's your point. Say I agree with it. But I have to find that he intentionally did this. This man with 45 years of prosecution experience intentionally, for this one client, misled the PTO. It's not just a matter of smoking gun. I'm having trouble with the intent. It's just a collection of all the evidence that we've talked about. These are not reasonable lawyer interpretations. They are factual misrepresentations. They are clear. Their own witnesses agree that they were misrepresentations. They did say- If I were to adopt that standard counsel, then every clear misrepresentation would amount to inequitable conduct. And that's clearly not what our case law says. It has to have been an intentional misrepresentation. The fact that it's clear doesn't make it intentional. Yes, and it cannot be a reasonable argument. It has to be a gross mischaracterization or factual mischaracterization. My point here with respect- But isn't it correct to assume that the examiner actually knew what was in these references? I mean, the examination process is very, very clear that the examiner at least must read through the references that were cited. Well- And they are cited. It is- No question about the citation, is there? Yeah, there's no question that in the application they disclosed the existence of Sleevian-Streisel. The right way to bring this to the attention of the examiner, according to the NPEP version in effect in 04 at the time, is to file an IDS. The NPEP- That's not the only way to do it. You're not mandated to file an IDS. Well, I believe- Not required. I believe you are, and the NPEP said- For example, this is section 6093C1A. It says that information about prior art may not be incorporated into the specification of the application in which it is being supplied but must be submitted in a separate paper. So the rules say if it's submitted in an IDS, copies are attached, and it says if it's done before the final office action, the examiner has to consider the art. By contrast, if it's simply listed in the specification, it says that's not the right way to do it. And again, I think the collective way- What does it say in the NPEP that you can't incorporate a reference in the written description, and it's not the correct way to do it? It must be done by IDS. Well, it's the language- Looks like it's section 609 Roman numeral 3C1- I'm sorry, A1, and it's the language that says the list of information about the prior art may not be incorporated into the specification of the application in which it is being supplied but must be submitted in a separate paper. Can you do that by argument to the Patent Office by showing what those references mean by a written letter to the Patent Office? Does it have to be done through an IDS? I think it needs to be done through an IDS, and here the argument had the effect, I think, of not causing the examiner to review the art, but the opposite. The misrepresentations led him away from the art. And I guess tying into the intent to deceive point, again, they could have done it the right way. They got the IDS actually ready to file and then made the decision not to file it, so as they're making these misrepresentations, they're making them in a manner that did not require them to write copies of the references to the examiner and that did not require the examiner to consider them. You want to spend your remaining minute on another issue you wanted to talk about? You bet. Very, very quickly, Your Honor, on claim construction. They say on page 26 of their brief, they do not dispute the order of claim steps, which is dispositive with respect to 100% of the system. They try to do an end run around the order of claim steps by advancing constructions of allowing in sound presentation. In 40 seconds or 30, here are the key points on why they're wrong there. First, they waive their construction of allowing by advancing a different construction, a contrary one of the district court. On sound presentation, what they propose is a non-ordinary meaning, but there's no definition set forth in the specification. But isn't the point that you can't terminate the telephone call if the line is busy before you determine whether the line is busy? That's it. That's it in a nutshell. It's simple. Before you make a decision to play or not play, based on whether it's busy or not, guess what? You've got to figure out if it's busy. So waiver their constructions before this court are inconsistent with one another. And really, at the end of the day, what they're trying to do, Your Honor, is to regain through claim construction what they gave up in prosecution. In prosecution, they said, Mr. Examiner, we're different. Unlike all the prior art, we play no sound presentation when busy, and therefore avoid irritating or losing goodwill with the cause. Thank you. Thank you, Mr. Carlson. Mr. Mowrey has some rebuttal time. Thank you, Your Honor. Quickly begin with inequitable conduct. Their argument essentially amounts to a nondisclosure argument. And the draft IDS in the March 5, 2002 letter were actual support for the court to say, yeah, they were disclosed inconsistent with an intent to hide them, because they disclosed the only two material non-accumulative pieces of prior art. Their argument basically amounts to they didn't give them copies of it. And we know, as Your Honor is saying, that from the MPPs, we know the examiner is expected to look at them. And this was presented at trial. It's also part of the reason why he found they were disclosed inconsistent with the intent to hide them. MPP 7-4 says you read it before you do a prior art search. We know we did a prior art search, because we found Gregoric 7-40. And there is no MPP 6-09 based office action saying you disclosed them in the specification, but we're not going to consider them, because you didn't put them in IDS. The last paragraph of 6-09 says, if they're disclosed in the specification, the examiner doesn't have to look at them. But if that's the case, send them an office action using the form paragraph that Singular cited as the rule. As to the MSJ, the argument really, from Singular's side, amounts to an extra steps argument. They're playing in a post-style delay before you hear it ring. When you call your friend's cell phone sitting on the desk, you will hear a quiet period before it rings in your ear. And then after that happens, you'll hear the phone on the desk ring. They're playing, they start to play, in a quiet period before the ringback tone period. The ringback tone period, by definition, only starts when you start to hear it in your ear. But you did not challenge the finding by the district court  the court found the sequence of the steps. Once you agreed to that, how is it infringed? If the steps were, in fact, acceptable from the claim construction basis, how did they infringe? Just because they're playing a sound presentation, they're replacing a ringback period with a sound. That is the essence of the invention. We replace the ringback tone with something, with media, sound, music, ads, something. And if they want to play, you can replace a dial tone with media. You can also put, after we've established a phone call between us, you can play ads or music in the background while we talk on the phone. There's a lot of periods you can send media to. But the only period protected by 608 is the ringback tone period. So if they determine the caller's identity, select a song, determine whether it's busy, all that, of course, especially determining whether it's busy, has to happen before the ringback tone period. Because you either get busy or ring. That is the gateway. It's more of a gateway argument. Once they enter the ringback tone period, that's it. They're infringing 608. What they do before or after is of no concern to 608. It doesn't protect it. It doesn't claim it. It's not a limitation. The ringback tone period is a clear limitation to both independent claims 1 and 9. To ignore that is to ignore the essence of the invention. I believe that's it for me. Thank you, yours. Oh, counsel, can I ask you both a quick question? Yes, ma'am. The briefs designate nearly every mention of the patent attorney and his involvement as confidential. Yet much of this appears in the district court opinion. So I'm just wondering, as we prepare to write an opinion, it's very difficult to write an inequitable conduct opinion without ever mentioning the patent attorney. What really is confidential? What is the concern about? Because a lot of it seems to me already to be public, what has been designated. We designated as confidential only those material that they did. So you don't care. All right, so you care. You tell me. What's confidential? Because a lot of it's in the district court opinion already and therefore is public. Yeah, that's true. At the time when this case is going on, a lot of things were claimed to be confidential. Attorneys has only a vast amount of it. And at the time of writing the brief, I wasn't able to suss through it. So I believe you're correct. For the purpose of writing your opinions, I don't think we have a problem with anything that you would say. I mean, nothing was. I don't think there was any trade secret or attorney client privilege things that would be set out. So we're OK with that, Your Honor. Thank you. Case will be taken under advisement. Thank you, Your Honor.